from Mr. Vogelton's. May it please the Court, Opposing Counsel, my name is Kevin Vogelton and I present my client, Appellant William D. Daniel Gusman, or I'm sorry, Short. Before I begin, Your Honors, I'd just like to say very quickly on the record this is my first time ever giving oral argument at the Fifth Circuit. I'm very proud of this moment in my career. Thank you very much for granting oral argument. Do we disappoint you by not giving you a trip to New Orleans? You know, I read that, Your Honor, and I was like, wow, what are the odds of that? But no, I enjoy Houston. I like to be here. Since the Court has already indicated it's familiar with the factual backgrounds, I will jump right into legal issues. There's five topics I want to discuss today. The first is that the District Court erred when it dismissed Mr. Short's property interest claim because Mr. Short did have a property interest claim in his continued employment insofar as he was only terminable for cause at the time that he was terminated. Second, the District Court erred when it dismissed Mr. Short's liberty interest claim under 1983 because he stated in his First Amendment complaint all of the elements necessary for a prima facie case. Mr. Gusman did not brief the issue on the motion to dismiss, and the directors only briefed it in passing and only with respect to their individual liability, not their official liability, and the District Court didn't discuss it all when it dismissed the complaint, which was error. You're right about that. It just sort of got ignored, the liberty interest claim, but it seems to me that's the perfect opportunity when you should ask for reconsideration in the District Court and say, oh, you know, you just forgot something. Let's get this cleaned up and get it ruled on before we go on appeal, and that would have been a much better situation than what we're dealing with now. So why didn't you tell the District Court that it had neglected this claim? I think it was a consideration, Your Honor, of one, we felt like we weren't going to lose the ability to appeal it to this Court if we didn't ask for reconsideration, and two, we knew that there were other issues that we were going to have to appeal to the Fifth Circuit, so rather than stretch out the delay from Mr. Short any longer than what was necessary, we decided to consolidate everything into this Fifth Circuit appeal. One of the reasons why we did that, Your Honor, is because, as alleged, you know, this wrongful termination has really destroyed Mr. Short's entire life, his career, his law enforcement career. To my knowledge, he's still unemployed, and he has been completely blackballed from the law enforcement community. So we wanted to kind of streamline everything to try to get the issues up here while we could. The remaining issues, Your Honor, are that fundamentally, and this is kind of a crux of the entire legal issue, the compliance directors are not receivers of the court. Even if they were receivers of the court, they're not entitled to sovereign or judicial immunity, which we'll get into. And then finally, we'll loop it back to Mr. Short does state a viable claim under Louisiana state law for violation of the workplace drug testing statutes. Okay. The property interest claim I'd like to tackle first. Under classic Supreme Court jurisprudence in the Ladder Mill case, if a public employee is only terminable for cause, then before you terminate that employee, you must give him a pre-deprivation hearing. It doesn't have to be elaborate, but in this case, as we've alleged properly in our First Amendment complaint, absolutely no termination hearing was given whatsoever. They notified Mr. Short that he was terminated by certified letter to his home. The question here, and what everybody disputes, is does the stipulated order create enough of a terminable for cause relationship that he has a protected property interest? The answer to that question is absolutely yes. Before we get into anything about Louisiana state law, about employment at will doctrine, about what the stipulated order says or doesn't say, I would like to say this. This is a Rule 12B posture case, and Mr. Short properly alleged in his First Amendment complaint that Sheriff Gussman and the class plaintiffs and the United States government all specifically dickered and negotiated paragraph D16 of the stipulated order specifically to protect Captain Short, people with the terminated for cause. And if it just, if it stopped with the first reason, which was misconduct and said he had the power to terminate only for misconduct, you'd have a, I think, a much stronger case. What do you do with the additional provisions that say people can get terminated just because of budget shortfalls or other management-type issues like that? That's a great question, Your Honor. I'm an employment lawyer by background. That's all I do is employment law. It is absolutely the case that that language is completely consistent with what this Court would consider as just completely undisputable termination only for cause language. For instance, in Louisiana, if you're a Louisiana State employee, a classified permanent civil servant, you can only be terminated for cause unless, and this happens all the time, I've litigated these cases, your agency has a budget shortfall and they abolish your position. And then all of a sudden you're terminated, not for cause, but because of the idiosyncrasies of state government require that you be terminated. That's all that Paragraph D-16 was doing. It said if you commit misconduct or things that are beyond the scope of control from an employer institutional perspective happen, we can get rid of you then. It wasn't saying that if there's no money in the jail, you know, Mr. Short and everybody else, you're locked in, we're going to have to go into debt to keep you here. It just said if it's misconduct or we run out of money or we abolish, I mean, it doesn't say abolish your position, but operational efficiency, these are all understood commonplace, terminable only for cause situations. And, but I would like to loop it back that in the 12B procedural posture, we have to accept Mr. Short's allegations as true. And if it is the case that Sheriff Guzman and the parties intended him to be protected from at will termination, then clearly under Fifth Circuit guidance, Supreme Court guidance, he's terminable only for cause. And if that is, and if the court agrees with that... Why does the intent matter? I mean, doesn't it just matter what the law says, whether we're looking at a statute here, we're looking at basically a court consent decree, essentially. It seems to me, Your Honor, that there's a reasonable dispute over the interpretation of the stipulated order. I mean, I don't think so. I think it's clear, but obviously the defendants disagree with me. But before this court case, were sheriffs, deputies, and captains, what was their status under Louisiana law? Could they be removed at will? Absolutely terminable at will. And that is one of the key points that... So isn't it strange to think that this court oversight gave them more protection when it's trying to put this person in place to clean up the jail and have a lot of power to fix problems with the jail, and yet we're going to give more protection to the employees than they had before? Oh, no, Your Honor. I think it's the exact opposite. If they wanted to keep it employment at will, D-16 wouldn't exist. D-16 wouldn't exist if they didn't want to alter the contractual relationship between the compliance director, Sheriff Gustman, and his employees. The only reason why that provision exists, which is exactly what Captain Short alleges, is that they actively negotiated the point and they wanted to convert him from at will to terminable only for cause. I only have 10 minutes left, Your Honors. I want to kind of speed through things. Just very quickly, under Louisiana law, to the extent that Louisiana law is known as an at will jurisdiction, it is completely clear, and the Louisiana Supreme Court has said, employment is a contractual obligation. The parties can make exceptions to the at will doctrine. The employees can do whatever they want. That's all that we're saying here, is that they contracted to do what they wanted to do. I'd like to quickly, I guess we covered the liberty interest claim, so I guess I'll move on from it. I want to talk very much about the receivership. Okay. The compliance directors are not receivers in the sense that the defendants are using that term, meaning that they are not equitable officers appointed by the court to discharge the court's equitable duties. The defendants cite to the PLATA line of cases in the Ninth Circuit for a lot of their support. Before we go any further, I'd like to point out that the Ninth Circuit, in the PLATA line of cases, specifically held in 2010, this was cited in my Rule 28J supplemental notice, that the receiver is not judicially immune from a breach of contract claim from a third party. So already, even if they are a receiver, the Ninth Circuit, which in their basing their law on the PLATA and the Ninth Circuit decisions, the Ninth Circuit already says, it doesn't matter if you're a receiver or not. But they're not a receiver. If you go back and you look at the original PLATA order that creates the receivership, there is a lot of discussion about this. PLATA was decided on the merits. The judge, after adjudicating a case on the merits, relied on the court's equitable side, the equity jurisdiction, to appoint a receiver in equity to take control of the prison reforms or the prison system and to make the changes that they need. What is different about this case? This case was not adjudicated on the merits of honor. It was adjudicated because the parties confected a settlement agreement, which under federal common law, because the United States is a signatory, so it has to be federal common law, federal common law says that when the parties confect a consent decree or stipulated order, the nature of that order is bound by the contractual obligations that the parties agreed to. So what does that tell us? That tells us that the stipulated order and all of the judge's decisions are on the law side of the court, not the equity side. So already there's a fundamental jurisprudential distinction between an equity receiver and the law receiver. But when we get into the guts of the stipulated or the PLATA agreement, which has been cited to in the record, but it wasn't part of the record, but it was cited to, so I think it's incorporated, it specifically says, the receiver and his staff shall have the status of officers and agents of this court, will be vested with the same immunities as vested in this court. Nowhere in the stipulated order does it say that they're receivers, that they're agents of the court, that they're officers of the court. It says that they're a representative of the court. It doesn't say that they have any immunities. It speaks to nothing of that. And so it's very distinguishable from those cases. I point out that in 2012, in the Seventh Circuit, there was a prison reform case where there was a court-appointed administrator, and that was a wrongful termination case where a former jail employee sued a juvenile detention facility. And the Seventh Circuit said, after the Supreme Court's decision, enforcer be white. That has to do with adjudicatory versus administrative decisions and whether or not judicial immunity is going to attach. The Seventh Circuit said, administrator is not immune, judicially, specifically in a wrongful termination case from a former employee. When you look at the nature of what the compliance director, Maynard, does, the order doesn't say that he's immune. The United States... The order does give him specific authority over personnel decisions with the language we were talking about on the property interest issue. So why doesn't that extend immunity to him for those personnel decisions? Again, a great question, Your Honor. It doesn't because, one, it's the nature of a contract and it is what it is. It doesn't say anything about immunity. But comparing it to the Plata Agreement, which the defendants first did, the Plata Agreement specifically gave its receiver all the same powers that the secretary of the prison system in California had. What does the stipulated order agreement do? It gives the compliance director less power than Sheriff Gussman. Because Sheriff Gussman, as Your Honor already correctly pointed out, Sheriff Gussman had employment at will termination authority over his employees. He didn't have all the restrictions of stipulated order. Stipulated order diminishes the compliance director's role compared to what Sheriff Gussman had. And that's because Sheriff Gussman dickered over those provisions to give the compliance director what he did. I'll end on that point by just saying that there's been a lot of debate about it. Clearly, the stipulated order and the very first order that's entered by Judge Afric in the Jones case makes clear that Sheriff Gussman appoints the compliance director. Judge Afric can give veto authority. He has to approve it. And if he doesn't approve it, it gets kicked back to the party plaintiffs and Gussman to come up with another name. But it is absolutely incorrect to say that Judge Afric appointed the compliance director. The stipulated order and the original order in this case appointing Director Maynard specifically has the language that Sheriff Gussman appointed the compliance director. But even if... Can we go back to the earlier merits discussion on this paragraph 16? What is your theory on operational efficiency? I think operational efficiency, Your Honor, means generally what I indicated before, which is if OPSO or Director Maynard decides that some positions don't need to exist anymore, they can abolish those positions. But this is not just a reduction in force. This is anything that is consistent with operational efficiency. This sounds much broader and, frankly, much broader from the standpoint of discretion. What kind of hearing would you expect? Because this has nothing to do with the officer. This is just the efficiency of the operation. I debated whether or not I was going to give this answer, but I guess I'm going to give it because I thought about it a lot. Your Honor, I'm going to answer your question with giving the classic employment lawyer's test to determine whether or not someone is at will or terminable for cause. It's called the necktie test. Captain Short went in to work one day after 14 years, and he was wearing a Houston Texans necktie, and Compliance Director Maynard said, I'm a Saints fan. You're fired. Clearly that's an arbitrary termination decision, but if Director Maynard could do it, clearly Captain Short's terminable at will. If Director Maynard could not terminate Captain Short for wearing a dumb necktie, then he's terminable only for cause. To answer your question directly, Judge Ho, what I would say is whatever you believe that paragraph D-16 means or does, clearly under D-16, if you've attained the rank of captain, you cannot be terminated for wearing a dumb necktie to work. If we believe that, if we're at that point, then nothing else matters. At that moment, when you can no longer terminate an employee arbitrarily for no reason at all, he's terminable only for cause. What was the regime, pardon my ignorance, what was the regime prior to the order? At will. Completely. There were no police union rules or anything? There's police union statutes, but they don't apply to the sheriffs. The sheriffs, it's well understood that before the stipulated order, or in the absence of the stipulated order, it's at will. But again, we've alleged, and we believe it is true, that it actually was Sheriff Gussman, Dicker for that point specifically, to protect them from at will termination. Because originally, originally the class plaintiffs wanted to be able to clean house and do whatever they wanted to do. Sheriff Gussman originally, this is all in our first amendment complaint, wanted to protect everybody from termination. He wanted to say, no, you can't terminate anybody. What is the hearing that you're expecting? I understand the hearing when it's about misconduct and you're basically trying the factual case, if you will, against the officer. What does the hearing look like when it's about efficiency? Well, Your Honor, I've never had to go before a hearing on that matter, so it would be tough for me to speculate. Well, but doesn't that suggest that you're not supposed to have a hearing? You must have a hearing. No, no, no. The question, the threshold question, as you acknowledge, is, is this for cause, does this language, is it sufficient to disrupt the at will presumption? And so, what I think you're arguing is operational efficiency and the rest of the language is enough to disrupt. I would say that- So you're not envisioning a world in which we're actually going to have a trial, essentially, a for cause hearing for efficiency. I would say that the merits of the hearing would be whether or not that that was a justifiable operational efficiency issue and that Captain Short would be allowed to go in and make his case. I mean, the Supreme Court doesn't say that it has to be a formal trial. It just says that you have to give them the opportunity to pitch their case to the decision makers. What's your best case for the proposition that a term like operational efficiency leads to a for cause analysis? Well, my best case is to say that the defendants have admitted that they didn't do this for operational efficiency. They did it for misconduct. Okay, but that answers my question, though, because we're talking about just a legal issue of how do we interpret this order. What is the best case for when an order provides for a new set of employment terms allowing for termination for any number of reasons, including operational efficiency, that that's something that we should consider for cause? I would say that the contract speaks for itself. I'm not aware of a case in which that specific language operational efficiency has ever been litigated. If this is the exact same case and they said, Mr. Short, we had to fire you for operational efficiency, not misconduct, and they still mailed in the letter at home, I'd still be in here saying the exact same thing, which is if they couldn't fire him because he wore a dumb necktie, it doesn't matter what the hearing looks like. It doesn't matter what the reasons are. It doesn't matter what the merit-based offenses are. The Supreme Court didn't get into that minutia when it laid down its rule. It just said, hey, look, public employee, terminable only for cause, you got to give the man a hearing. And that's all that we say here. I only have 30 seconds left, so just very quickly, I do want to say that the idea that there's sovereign immunity, I think, is specious. This is the first case that I'm aware of that they've ever asserted sovereign immunity. What does it come down to? You sued the receiver or the compliance director in his official capacity. Who would be on the hook if you won? Who would be paying that award if you won that claim? Great question. It is absolutely Orleans Parish Sheriff's Office. We cannot and we have not the answer. To attack the coffers of the court of the United States, it's specious. We are only seeking to recover against, officially, the Orleans Parish Sheriff's Office and individually from the pocket of Mr. Maynard. All right. You've served some time for rebuttal. We'll now hear, I guess, the defendants have split up their time. We'll first hear from Mr. Paul. Good morning, Your Honor. Matthew Paul on behalf of Gary Maynard and Darnold Hyde, the defendants. I'd like to focus on the immunity issues that cover the compliance directors. Ms. Cooper is going to primarily address the failure to state a claim. I'm happy to answer any questions that you have. This court held in 1995, Davis v. Bayless. Court-appointed receivers act as arms of the court and are entitled to share the appointing judge's absolute immunity, provided the challenge actions are taken in good faith and within the scope of the authority granted to the receiver. During all relevant events in this case, Gary Maynard was the compliance director who was appointed by Judge Afric in the Eastern District of Louisiana to exercise final authority over the Orleans Parish Jail on behalf of the court to bring it into compliance with the class action consent judgment. He served at the pleasure of the court. He was answerable only to the court and removable only by the court. The appointed Mr. Maynard has subsequently confirmed that the compliance director is an officer or agent of the court and a functional equivalent of a court-appointed receiver. Let's say Mr. Maynard fired 20 deputies and they were all women, even though women are a very small percentage of the workforce in the Sheriff's Office. You're saying those deputies have a discrimination claim against him? I think if the plaintiff could adequately allege a lack of good faith in carrying out his court-appointed duties, she could overcome immunity. I think it's at least available whether that would fall into that category. The question of could the receiver reasonably believe that firing someone because of their lack of good faith? What about a contract claim? If Maynard hired some people to help him, some consultants, and there was a contract and he didn't pay those consultants, would they be able to bring a contract claim against him? That is a harder question. I'm not sure. I think it would depend more on the facts of the case. I think it is within the power of the district court to impair the operation of state law, including contract law, if it were necessary and proper in effecting compliance with the consent judgment. I think it would be a question of whether that was actually a compliance director's decision to do it in that case was an exercise of his authority and good faith under the order. In this case, though, there is no dispute that Mr. Maynard acted in good faith in firing Mr. Short. It's actually alleged in Mr. Short's complaint that the sole motivating factor for his termination was the failed drug screen. It cannot reasonably be disputed that Mr. Maynard was acting within the scope of his authority in firing Mr. Short. The stipulated order gives the compliance director final authority to terminate employees, captain or hire. I think you discussed a few of these. Misconduct, failing to satisfy job expectations, financial prudence, operational efficiency, and a catch-all inhibiting progress toward the consent judgment compliance. I think the last one in particular, I don't see how that could have been determined by the compliance director that for whatever reason he believes that compliance toward the consent judgment is going to be served by firing this person. I don't see how that's any sort of reviewable standard whatsoever in that. I think here there can be no dispute that a jail captain who is illegally using drugs, that would be misconduct, that would be failing to satisfy expectations, that would be inhibiting progress toward the consent judgment compliance, particularly when contraband in the jail was one of the conditions that led to the consent judgment in the first place. Even if the decision to terminate Mr. Short was made based on a factually incorrect assumption or belief, it would still not be beyond the authority of the compliance director. Mr. Maynard is absolutely immune from any claims based on terminating Mr. Short. There are also official capacity claims against Mr. Maynard and Mr. Hodge. Official capacity suits are in reality suits against the entity for which the officer or agent is an officer or agent. Again, the district court who created the position and appointed the compliance director has confirmed the compliance director is an officer or agent of the court. So an official capacity suit against the compliance director is in fact a suit against the federal court and it's barred by sovereign immunity. Sovereign immunity has not been waived here. Mr. Short has not adequately alleged that Mr. Maynard acted without any culpable basis for authority. As to the property interest, I think it's been pointed out, but I just wanted to emphasize again, this is not a question of, as in the Ninth Circuit case, a question of impairing some kind of preexisting contractual rights. This is a property right that, according to Mr. Short, actually arose with the appointing of the compliance director. And he's discussed the stipulated order as a contract. I mean, even if it is in part a contract, Mr. Short was not a party to the contract. He was not a named beneficiary of the contract. And the compliance directors are not parties to the contract. So it's not the sort of thing that could create a contractual property right for Mr. Short. Third, then, discretion given to the compliance director to fire higher-ranking employees is so broad that it doesn't meaningfully constrain him in any way that would be necessary to create a property interest. And fourth, there's simply no permanence to the stipulated order. It's a provisional remedial order by the district court that's subject to modification at any time by the court and that will terminate when the court finds it's no longer needed. I think under those circumstances, it does not have the permanence and stability that would give someone a reasonable expectation of continued employment, which you would have to have to have a property right. And as to the liberty interest claim, there's no clearly established law saying that the opportunity that Mr. Short had to clear his name was inadequate. He was given the opportunity to produce a prescription of the oxycodone, which he wasn't able to do. So I think it does, in light of that, at minimum, a compliance director would have qualified immunity on the liberty interest claim. Did you argue that below? It seemed like the liberty interest was just forgotten below. In the district court, it was addressed very quickly in a footnote. But even in your motions, I didn't see where anyone moved for dismissal of that claim. Maybe there was a footnote somewhere, I think. I believe it was addressed, I think, in a footnote in the motion to dismiss. It was addressed in our appellate brief. All right. Well, we have your argument. Thank you. Thank you, Your Honor. We'll now hear from Ms. Cooper. May it please the Court, my name is Rebecca Cooper, Counsel for Appellee Sheriff Marlon Gussman. Ultimately, nearly all of the issues in this case can be resolved by a finding that sheriff deputies, including Captain Short, were employed at will. And this Court should find in favor of the appellees and affirm the district court's dismissal of this suit for three reasons. First, Plaintiff William Short does not have a property interest in his job as a sheriff deputy. Second, Louisiana's drug testing laws do not provide a private right of action for wrongful termination. And finally, plaintiff has not been deprived of his liberty interest. As the first point, the plaintiff has no property interest because he was employed on at will basis. As has been thoroughly covered, the baseline assumption in Louisiana is that all employees are employed at will. This at will status is not altered by employee manuals, policies, grievance procedures, and specifically, sheriff deputies are at will and serve at the pleasure of the sheriff. Now, the only way that the plaintiff could have a property interest is if that calculation was changed by the stipulated order. However, the stipulated order simply does not change the at will status of Mr. Short. To begin, he was not a party to the stipulated order. Second of all, the stipulated order doesn't use the language of cause or good cause. This actually stands in contrast to the compliance director. The compliance director, the parties can petition the court to have dismissed for good cause as laid out in the stipulated order. The stipulated order defines good cause as neglect of duties, willful misconduct, things for which the compliance director has personal responsibility. This absence of the language of cause or good cause really is similar to the case of Evans v. City of Dallas. In that case, a probationary employee could only be terminated by the City of Dallas for valid reasons was the language used there. The court there said valid reasons is not good cause, it's not just cause. Valid reasons is merely a procedure through which termination may be accomplished. That's pretty much what these reasons in the stipulated order are. They're not cause, they're just considerations, a procedure through which a termination may be accomplished. Additionally, the stipulated order gives reasons other than cause for termination. As Judge an employee has no control. Additionally, the reasons that are given for termination are incredibly broad and give wide discretion to the compliance director. For instance, what does failing to satisfy job expectations mean? That could just mean, hey, things aren't working out here. We have a personality clash. That isn't necessarily something that an employee has done wrong. It just means the compliance director says, you're not the guy for me. Particularly in this case where the compliance director has such an important role of trying to turn around this jail, get it into constitutional compliance, he needs to have the top brass working under him really be able to respond to him in a meaningful way. That is why the compliance director has been carrying out his job. Who actually made the decision? Maynard or the sheriff? Going by the amended complaint, it's not clear and we haven't done the summary yet. It pleads in the alternative, right? Either one. Correct. He pleads in the alternative. What's your position? If Maynard clearly made the decision to terminate the plaintiff, could the sheriff, I know you think there's no property interest and all that, but could the sheriff be subject to suit for that decision if there were a valid claim? If he did have a property interest? Right. Well, I think that would be a difficult position because under the stipulated order, the sheriff doesn't have firing power or hiring power. He's not the ultimate decision maker if the stipulated order was in fact followed here as I imagine it probably was. This case is also quite similar to Stem v. Gomez. In that case, the Texas legislature passed a statute that said that law enforcement officers against whom a complaint had been filed could only be disciplined after receiving notice, having a hearing, and there being evidence to prove misconduct. The court noted that the statute did not explicitly say that these officers could be fired only for cause and it found that the legislation didn't constrain the city in any meaningful way from discharging its employees. Rather, the court found that there's no property right if rules only provide considerations for the exercise of discretion. That is exactly the situation we have here. We have five broad reasons that give wide discretion to the compliance director to terminate an employee. Those are merely considerations for the exercise of discretion. It is not a property right. As a final point on this issue, the stipulated order is simply too vague to be the basis of a property interest. This is a temporary document that is set to go away really at any moment at Judge Afric's discretion. Once Judge Afric finds that the jail is making material progress towards substantial compliance with the consent judgment, there will no longer be a compliance director, there will no longer be a stipulated order, and any alleged property interest that these certain employees have will go away, which kind of leads to potentially absurd results if there is a property interest. Does that mean that Judge Afric has to call all captains or hire into court and say, all right, show me that and provide them notice and opportunity to be heard before he takes away a property interest by getting rid of the stipulated order? That leads to absurd results if you say that there's a property interest for these certain employees. For my next point, there's no wrongful termination under Louisiana's drug testing laws. Plaintiff concedes that if he is found to be an at-will employee, he acknowledges that there, he does not contest that there's no cause of action under Louisiana's drug testing laws. Sanchez, the case that we're referring to as Sanchez 2, clearly states that Louisiana's drug testing laws do not provide a statutory basis for wrongful termination claims, and this holding is not limited to at-will employees. As a further point, since 1990, no court has found a cause of action for wrongful termination. As a final point, there's been no deprivation of plaintiff's liberty interest because the two OPSO employees stated that he failed a drug screen, and plaintiff admits that he failed a drug screen, that laboratory testing indicated oxycodone, and he was not able to provide a prescription for oxycodone. Now, he claims that the OPSO employees say that he failed a drug screen for cocaine and methamphetamine. Actually, he failed it for oxycodone without a prescription. This is a distinction without a difference. No law enforcement agency will tell you what the drug is that you failed for. They only care that you failed a drug test, and they can't put you in charge of enforcing the state's laws watching over inmates, if that is the case. Basically, because what these employees allegedly said wasn't false, there can be no claim there. For the foregoing reasons, I respectfully request that the court find in favor of the appellees and affirm the district court's dismissal of this suit. Thank you. All right. We're going to have a rebuttal. I'll have to be quick, Your Honors. I just want to cover a couple of quick points. That's exactly what the defendants are going to do. They're going to say, if this court upholds the immunity defenses and et cetera, they're going to say, you know what? Director Maynard does everything bad, and he's immune, and Sheriff Gustman doesn't have any control, so from now on, anything that Director Maynard does in violation of state law, federal law, it doesn't matter. You are barred from the courthouse. This is exactly what the Ninth Circuit said in the MedDev decision, which was cited in the Rule 28 supplement. I'll quote from it. A receivership does not create a liability-free zone for the business or organization that is subject to the receivership. A third party cannot be left on the cold with nowhere to turn, because that's exactly what the receiver and the prison system did in the Plata line of cases. They started saying, well, it's not me. It's him. And then the other person said, it's not me. It's him. We have to avoid all of that, which is easy to do, because in reality, nobody actually has this immunity defense, which is exactly what the Ninth Circuit and the Seventh Circuit have already held in these types of cases. I want to quickly talk about Davis v. Bayless. I didn't get to it before. Davis v. Bayless is no bar to finding that Director Maynard does not have judicial immunity, whether under the law of it or the Fifth Circuit's rule of orderliness. Davis v. Bayless simply says that in a state court judgment, debt, or proceeding, if you are an actual receiver, if you're a trustee, and your task is to go out and to find assets and liquidate them for the benefit of creditors, and you take your job in good faith, and you only do things that are within the scope of your job, then you have judicial immunity. I won't rehash it. They're not trustees. They're not judgment creditors. They're not trying to find assets for judgment creditors. And to the extent that Davis conflicts with Forrester v. White, which is the Supreme Court's binding in the Fifth Circuit's decision in O'Neill, which is cited extensively, which talks about all the factors that would go into judicial or quasi-judicial immunity, then Davis v. Bayless is simply distinguishable and not applicable here. To the extent that Paragraph 16, that anybody wants to say that Paragraph 16 is discretionary and that it means nothing, this is, I can't stress it enough, Your Honors, at the 12B stage, this is a contract interpretation issue, and the district court and this court reviewing de way that gives meaning to each paragraph under this court's jurisprudence and does not find that any particular paragraph is superfluous. If the director had complete at-will termination authority, then D-16 means nothing, and our good faith allegation, which must be accepted as true at this stage, that Sheriff Gustman acted But isn't there a difference between constraining the director's discretion and creating a property interest for your client? Those are two different things. You can do the former without the latter. I disagree, Your Honor. To the extent that we restrain an employer's ability to terminate an employee for any reason, now that employee is only terminable for cause, and on the Supreme Court, you must give that person a hearing. I'm out of time. Again, thank you for the opportunity to give a little argument. All right. The case is submitted.